Carl A. BRADBURY, Plaintiff in Error,

v.

OKLAHOMA STATE BOARD OF CHIROP-
ODY, Defendant in Error.

No. 43674.

Supreme Court of Oklahoma.

Oct. 26, 1971.

Harold K. Haxton, Woodward, for plaintiff in error.

Lee Gill, Oklahoma City, for defendant in error.

BLACKBIRD, Justice:

This appeal involves an action brought by the defendant in error, hereinafter referred to as the "Board", and/or "plaintiff", to enjoin plaintiff in error, hereinafter referred to as "defendant", from unlawfully engaging in the practice of Chiropody in violation of Title 59, O.S.1961, §§ 136–159.5, both inclusive, which State law requires, among other things, that persons practicing that profession in this State have a license to do so, issued annually by said Board.

Defendant's first Oklahoma license to practice Chiropody was issued in 1958. He thereafter renewed it annually up to and including the period ending June 30, 1966, but did not do so between that date and

the date this action was commenced in June, 1968.

The provisions of the above cited law concerning renewal of such licenses, and failure to renew them, are set forth in Section 145, supra. Those involved here read, in material part, as follows:

"Each license to practice Chiropody heretofore issued which remains effective under the provisions of this Act * * * shall entitle the licensee, * * * to practice Chiropody * * * from the date of issuance thereof until the following first day of July and as long as lawfully renewed, * * * Upon such application therefor, * * * and upon first satisfying the Board that he or she is not at the time violating * * * the Code of Ethics and upon the payment in advance to the Secretary-Treasurer of the Board of the annual renewal fee required * * * a licensee *shall be entitled* to have his or her such license * * * renewed annually on or before the first day of each July, * * *; and a Licensed Chiropodist who does not so satisfy the Board and pay the annual renewal fee * * * in the time and manner required * * *, shall cease to be entitled to have such license renewed. If not paid on or before September 30 immediately following such first day of July, the annual renewal fee shall become delinquent and the license shall be automatically suspended and not entitled to renewal thereafter, * * * Upon such suspension all the rights of the licensee by virtue of the license shall be suspended and cease and shall remain suspended unless or until the license is reinstated as authorized by the Applicable Laws and the Rules and Regulations. The license shall be renewed by the Board upon the payment of the delinquent annual renewal fee, without penalty, between July 1 and September 30 immediately following, if, and only if, the licensee first satisfies the Board that during the then immediately preceding twelve (12) months he or she did not vi-olate, and that at the time he or she is not violating the Applicable Laws or the Code of Ethics or any of the Rules and Regulations applicable to him or her; and the renewal, if granted by the Board, shall operate to remove the suspension aforesaid. *After that September 30 and on or before the close of the next following June 30*, and upon such application therefor, if any, as the Board requires, and upon first satisfying the Board that during the then immediately preceding twelve (12) months he or she did not violate, and at the time is not violating, the Applicable Laws or the Code of Ethics or any of the Rules and Regulations applicable to him or her, a licensee *shall be entitled* to have his or her such license to practice Chiropody reinstated, upon the payment first of the delinquent annual renewal fee, *plus such penalty additional as the Board imposes*, not to exceed in all four (4) times the delinquent fee; and the reinstatement shall operate to reinstate the license and remove such suspension. But such a license to practice Chiropody *not so reinstated* in such time *shall become void at the close of that June 30*; and *thereafter* it shall *not be renewed or reinstated.* The annual renewal fee shall be * * * Fifteen Dollars ($15.00) * * *." (Emphasis added)

The "Code of Ethics" above referred to is defined in Section 136(e) of the Law as being the code of ethics of the Oklahoma Chiropody Association.

In his answer to plaintiff's petition for the injunction, defendant alleged that the provisions of the above quoted statute requiring the Board to be satisfied that licensees are not violating the (Oklahoma Chiropody Association's) "Code of Ethics" are unconstitutional (for reasons hereinafter indicated); and, in a cross-petition accompanying his answer, defendant tendered "renewal fees of $15.00 per year, for renewal" of his license, and prayed for judgment determining that the cited requirement for renewal is unconstitutional and ordering that plaintiff Board accept his

tender of renewal fees and renew his license.

At the trial, it was stipulated, among other things, that after his license expired on June 30, 1966, defendant had never tendered a $15.00 license renewal fee to the Board (until the above mentioned tender in his cross-petition).

In his judgment, the trial court found that the annual fee for the renewal of defendant's license for the year beginning July 1, 1966, had not been paid, and that, no such fee having been paid thereafter by June 30, 1967, defendant's license then became void. In accord with these findings, the judgment permanently enjoined defendant from practicing Chiropody in violation of Oklahoma law.

After the overruling of his motion for a new trial, defendant lodged the present appeal.

In his initial brief, defendant says, without contradiction, that paragraph 20 of the Oklahoma Chiropody Association's Code of Ethics makes it a violation of said Code for a licensed Chiropodist not to be a member in good standing of both that organization and the National Association of Chiropodists. This statement is inferentially supported by the fact, stipulated at the trial, that the plaintiff Board will not accept a fee for renewing a Chiropodist's Oklahoma license, unless he is a member in good standing of both Associations.

Defendant charges that both of these Associations are private organizations; and he bases his position that Section 145, supra, is unconstitutional on the premise that membership in them has no relation to public health, safety, or welfare, and therefore that said section's provisions, which, in effect require a Chiropodist to satisfy the Board that he is a member of them in good standing, before he is entitled to renewal of his Oklahoma license, exceeds any valid exercise of the State's police power.

■ It is a well-settled principle, long adhered to in this jurisdiction, that this Court will not pass upon the constitutionality of an act of the Legislature, or any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining has been, or is about to be, denied some right or privilege, *to which he was lawfully entitled.* City of Shawnee v. Taylor, 191 Okl. 687, 132 P.2d 950, and Black v. Geissler, 58 Okl. 335, 159 P. 1124. When the present action was filed in 1968, it had been so long since defendant's Oklahoma license to practice Chiropody had expired that, under provisions of Section 145, supra—whose constitutionality defendant makes no attempt to challenge—he was no longer "entitled" to a renewal of said license, but, on the contrary —as the trial court found—his previous license was then "void" and no longer renewable.

■ Defendant's excuse for not applying for renewal of his license and tendering the renewal fee during one of the periods (after July 1, 1966) prescribed by Section 145, supra, for such renewals, is that he knew this would be futile, it being admitted that the Board would not renew his license unless he was a member of the State and National Chiropody Associations. This, however, constitutes no valid reason for his failure to lay the necessary predicate for challenging what he terms the "unconstitutional" provisions of Section 145, supra, by timely applying for the renewal and tendering his renewal fees. As he failed to do this during any period in which his license might have been renewable, there was nothing the trial court was authorized to do under the plain provisions of that section, except declare his license void and grant the injunction prayed for.

Affirmed.

All the Justices concur.