### 2007 OK 30

**OKLAHOMA EDUCATION ASSOCIATION; Independent School District No. I–07 of Rogers County, Oklahoma, a/k/a Foyil Public Schools; Independent School District No. I–41 of Oklahoma County, Oklahoma, a/k/a Western Heights Public Schools; and Independent School District No. I–05 of Tulsa County, Oklahoma, a/k/a Jenks Public Schools, Plaintiffs/Appellants,**

**v.**

**STATE of Oklahoma, ex rel. The OKLAHOMA LEGISLATURE; Senator Mike Morgan, In His Official Capacity as President Pro Tempore of the Oklahoma State Senate; and Representative Todd Hiett, In His Official Capacity as Speaker of the House of Representatives of the Oklahoma Legislature, Defendants/Appellees.**

**No. 103,702.**

Supreme Court of Oklahoma.

May 8, 2007.

Joe E. White, Jr., White & Weddle, P.C., and Richard Bryan Wilkinson, Oklahoma Education Association, Oklahoma City, OK, for the appellants.

Neal Leader, Senior Assistant Attorney General, and Martha R. Kulmacz, Assistant Attorney General, Office of the Oklahoma Attorney General, Oklahoma City, OK, for the appellee the Oklahoma Legislature.

Cheryl Purvis, Oklahoma State Senate, and Lee Slater, Oklahoma City, OK, for the appellee Senator Mike Morgan, President Pro Tempore of the Oklahoma Senate.

Amy Alden and Jennifer J. Butts, Oklahoma House of Representatives, Oklahoma City, OK, for appellee Representative Todd Hiett, Speaker of the Oklahoma House of Representatives.

TAYLOR, J.

## I. ISSUES

¶ 1 The questions before this Court are (1) have the plaintiffs alleged sufficient facts to show that they have standing to assert violations of the rights of Oklahoma students based on the Oklahoma Constitution, (2) do the plaintiffs have a constitutional and statutory duty to provide Oklahoma's students with a basic, adequate education, and (3) do the substantive issues before for this Court present a non-justiciable, separation of powers question. We answer the first two questions in the negative and the third question in the affirmative.

## II. STANDARD OF REVIEW

■ ¶ 2 This appeal presents only questions of law. This Court reviews questions of law under a *de novo* standard [1] and without deference to the lower court.[2]

## III. PROCEDURAL HISTORY

¶ 3 The Oklahoma Education Association (OEA) and three school districts, Foyil,[3] Western Heights,[4] and Jenks[5] (plaintiff school districts), brought suit against the Oklahoma Legislature; Senator Mike Morgan, in his official capacity as President Pro Tempore of the Oklahoma State Senate; and Representative Todd Hiett, in his official capacity as Speaker of the Oklahoma House of

---

1. *Rogers v. Dell Computer Corp.,* 2005 OK 51, ¶ 18, 138 P.3d 826, 831.

2. *Gladstone v. Bartlesville Indep. Sch. Dist. No. 30,* 2003 OK 30, ¶ 5, 66 P.3d 442, 445.

3. Foyil Public Schools is also known as Independent School District No. 1–07 of Rogers County, Oklahoma.

4. Western Heights Public Schools is also known as Independent School District No. 1–41 of Oklahoma County, Oklahoma.

5. Jenks Public Schools is also known as Independent School District No. 1–05 of Tulsa County, Oklahoma

Representatives. The OEA stated that it was bringing the suit in its corporate capacity and on behalf of its individual members and the students they serve. The members of the OEA are employees of Oklahoma school districts. The plaintiff school districts likewise stated that they were bringing the suit on their own behalf. However, no Oklahoma students are parties to this suit.

¶ 4 The plaintiffs challenge the current level of funding for common education. In their amended petition, the plaintiffs alleged the defendants, by inadequately funding education, are (1) depriving Oklahoma school children of a constitutional right to a uniform opportunity to receive a basic, adequate education according to the standards set by the Oklahoma Legislature and (2) depriving Oklahoma school districts of the ability to fulfill their constitutional and statutory obligations to meet the contemporary educational standards established for every child.

¶ 5 In the plaintiffs' five claims for relief, they seek a declaration that the Legislature's failure to adequately fund common education violates article I, section 5;[6] article X, section 32;[7] article XIII, section 1;[8] and article II, section 7[9] of the Oklahoma Constitution. They posit that the Legislature's alleged inadequate funding has deprived educators of the opportunity to provide a basic, adequate education to Oklahoma's children, denied Oklahoma students the right to a uniform, basic education, and violated the students' due process and equal protection rights. The plaintiffs also seek a declaration that the unfunded cost of meeting statutory educational standards exceeds one billion dollars and the unfunded capital needs of Oklahoma school districts exceeds three billion dollars. The plaintiffs ask the court to order the Legislature to design, formulate, adopt, properly and adequately fund, and maintain a comprehensive system of educational funding which affords each child in Oklahoma an equal opportunity for a basic, adequate education and to retain jurisdiction in this matter until the Legislature has implemented such an educational funding system.

¶ 6 The defendants moved for dismissal on several grounds. The two dispositive grounds are (1) the plaintiffs lack standing and (2) the petition presents a non-justiciable political question which is closely tied to the separation-of-powers doctrine.

## IV. STANDING

¶ 7 The burden is on the party invoking a court's jurisdiction to establish its standing to seek relief in the court.[10] To

6. Article I, section 5 of the Oklahoma Constitution provides:
 Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control; and said schools shall always be conducted in English: Provided, that nothing herein shall preclude the teaching of other languages in said public schools.

7. Article X, section 32 provides:
 For the purpose of providing buildings for school districts, there is hereby established a State Public Common School Building Equalization Fund in which shall be deposited (1) such monies as may be designated or provided for such purpose by the Legislature, other than ad valorem taxes, and (2) the proceeds of all property that shall fall to the State by escheat and penalties for unlawful holding of real estate by corporations; provided, that if such disposition and use of money from any such sources shall be declared invalid, the validity of other provisions of this section shall not be affected thereby. The State Public Common School Building Equalization Fund shall be administered by the State Board of Education, until otherwise provided by the Legislature. Such Fund shall be used to aid school districts in acquiring buildings, under such regulations as may be prescribed by the administering agency, unless otherwise provided by law, and the amount paid therefrom to or for any school district shall be determined by a formula established by the Legislature. The administering agency is authorized to accept grants-in-aid from the federal government for building purposes.

8. Article XIII of the Oklahoma Constitution deals with education. Section 1 provides: "The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated."

9. Article II, section 7 of the Oklahoma Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law."

10. *Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, ¶ 8, 890 P.2d 906, 910.

establish standing, the plaintiff must show (1) a concrete, particularized, actual or imminent injury in fact, (2) a causal connection between the injury and the alleged misconduct, and (3) a protected interest "within a statutorily or constitutionally protected zone."[11]

¶8 We decipher two injuries which the plaintiffs assert have resulted from the Legislature's alleged failure to adequately fund Oklahoma's educational system. First, students are harmed because they are deprived of a uniform, basic, adequate education, of their rights to due process, and of their rights to equal protection of the law, all mandated by the Oklahoma Constitution. Second, the OEA's members and the plaintiff school districts are harmed because they are unable to meet their constitutional and statutory duties as educators. We first address the OEA's and the plaintiff school districts' standing to challenge the alleged constitutional deprivations to Oklahoma's students.

¶9 The OEA claims associational standing to seek relief on behalf of Oklahoma's students and on behalf of its members based on its members' standing[12]. An association has standing to seek redress for injury on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[13]

## A. Standing to Assert Injury to Oklahoma Students

¶10 When ruling on a pretrial motion to dismiss for lack of standing, the trial court, and subsequently the reviewing court, "must construe the petition in favor of the complaining party."[14] If the plaintiff alleges facts which are sufficient to establish standing, then the case proceeds to the next stage.[15] A party's standing may be examined at any stage of the proceedings, and the party seeking relief has a greater burden at later stages in the case than in defending a pretrial motion to dismiss.[16]

¶11 The OEA asserts that it has standing as an association based on its members possessing standing to sue in their own right. For the OEA to have associational standing, its members must have a " 'direct, immediate and substantial' " interest in the controversy and a "personal stake in the outcome."[17] In this respect, its members' injuries must be to their own legal rights and not those of others.[18] With few exceptions,[19] "constitutional rights are personal and may not be asserted vicariously."[20]

---

**11.** *Indep. Sch. Dist. No. 9 v. Glass*, 1982 OK 2, ¶ 10, 639 P.2d 1233, 1237.

**12.** OEA does not claim any injury in its own right which would show that it has standing aside from associational standing to bring this suit. The OEA seems to assert that its members have standing as taxpayers and citizens but fails to provide any argument or support in its briefs for this position. Thus OEA's position that it has standing because its members have standing as taxpayers and citizens is deemed abandoned. *Okla. City Urban Renewal Auth. v. Oklahoma City, Oklahoma*, 2005 OK 2, n. 9, 110 P.3d 550, 555 n. 9.

**13.** *Okla. Pub. Employees Ass'n. v. Okla. Dept. of Cent. Serv.*, 2002 OK 71, ¶ 9, 55 P.3d 1072, 1077.

**14.** *Indep. Sch. Dist. No. 9 v. Glass*, 1982 OK 2 at ¶ 10, 639 P.2d at 1237.

**15.** *Id.*

**16.** *Toxic Waste Impact Group, Inc.*, 1994 OK 148 at ¶ 8, 890 P.2d at 910.

**17.** *Hendrick v. Walters*, 1993 OK 162, ¶ 5, 865 P.2d 1232, 1237.

**18.** *Id.*, at n. 14, 865 P.2d at 1236, n. 14.

**19.** The most serious, countervailing policies may provide exceptions to this rule. *Forest Oil Corp. v. Corp. Comm'n of Okla.*, 1990 OK 58, ¶ 31, 807 P.2d 774, 788. The United States Supreme Court has stated an exception when non-parties may suffer injury from the outcome but have no effective way to preserve their rights. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Another exception is where a statute has been challenged as violating the First Amendment for facial overbreadth. *Id.* at 611–614, 93 S.Ct. 2908.

**20.** *Broadrick*, 413 U.S. at 611, 93 S.Ct. 2908; *Forest Oil Corp. v. Corp. Comm'n of Oklahoma*, 1990 OK 58, ¶ 31, 807 P.2d 774, 788.

¶ 12 The plaintiffs assert injury to the rights of Oklahoma's students. The OEA has not established that any of its members are Oklahoma students. Although some of the members of the OEA may be parents of Oklahoma students, this is insufficient to establish the OEA's standing to assert injury to the students' rights. The OEA has failed to meet its burden to show that any of its members have a right of their own to assert injury to the rights of Oklahoma's students. As the OEA's members cannot vicariously assert injury to the constitutional rights of Oklahoma's students, neither can the OEA. The OEA has failed to meet the first prong of the test for associational standing as to this claim.

¶ 13 The OEA relies on the fact that in *Oklahoma Education Association v. Nigh*,[21] an original action before this Court, it was allowed to assert that the Oklahoma State Land Office was violating its constitutional duty by giving preferential leases for certain lands contained in the Oklahoma School Land Trust. This Court is not bound by its exercise of jurisdiction in *Nigh* because the OEA's standing passed without mention in that case.[22]

¶ 14 The plaintiff school districts fail to allege facts which support their standing to assert the rights of all Oklahoma students. They allege: "[S]tudents enrolled in Oklahoma school districts are denied their fundamental right to a basic, adequate education as required by the Oklahoma Constitution." The plaintiff school districts have not alleged that any of their students are failing to receive a basic, adequate education, *i.e.* that any of their students have been injured. The plaintiff school districts have failed to present us with any authority to show that they have standing to assert the violation of the constitutional rights of students generally across this state.[23]

¶ 15 Generally, this Court will not address the constitutionality of a legislative act, and similarly a failure to act, until presented with a proper case in which it appears the complaining person has been or is about to be denied a right or privilege to which the person is lawfully entitled.[24] The parties here have not alleged facts which show that they are the proper parties to bring this suit.

## B. Standing to Assert Harm to the Plaintiff School Districts and to OEA Members

¶ 16 The plaintiffs allege that the plaintiff school districts must comply with unfunded or partially-funded legislative mandates or risk sanctions or other penalties. When a party does not rely on a particular statute or constitutional provision authorizing suit, the question of standing depends on whether the party has "alleged a personal stake in the outcome of the controversy."[25] In this case, the plaintiff school districts and OEA have alleged that the school districts may be sanctioned or penalized for failure to comply with legislative mandates caused by their receiving insufficient funds to do so.

¶ 17 Without pointing to any specific provision, the plaintiffs assert that school districts and teachers are constitutionally and statutorily required to provide students with a uniform, adequate education. Article XIII, section 1 and article I, section 5 of the Oklahoma Constitution imposes on the Legislature the duty to "establish and maintain a system of free public schools." The school districts and their boards are but the

**21.** 1982 OK 22, 642 P.2d 230.

**22.** *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952). OEA alleges that one of its strategic objectives "is to secure commitment to the intrinsic value of public education in Oklahoma, promote public education as a basic right and increase Oklahoma's financial investment in public schools." While this is a lofty objective, we question whether OEA's attempt to represent students for additional educational funding does not directly conflict with the OEA's role in representing school employees for salary and benefits increases before the Oklahoma Legislature and school boards.

**23.** *See Broadrick*, 413 U.S. at 611, 93 S.Ct. 2908; *Forest Oil Corp. v. Corp. Comm'n of Oklahoma*, 1990 OK 58, ¶ 31, 807 P.2d 774, 788.

**24.** *Bradbury v. Okla. State Bd. of Chiropody*, 1971 OK 130, ¶ 10, 490 P.2d 246, 248.

**25.** *Indep. Sch. Dist. No. 9 v. Glass*, 1982 OK 2 at ¶ 8, 639 P.2d at 1237.

vehicles which the Legislature uses to carry out this constitutional duty.[26] A school board's powers and duties are restricted to those expressly granted, fairly implied, necessarily incidental to the express powers, or essential to its declared objects and purposes.[27] We do not find that either of these two constitutional provisions places any duty on local school districts, school boards, or school employees to maintain or establish public schools, and the plaintiffs have failed to point to any. Simply, the plaintiffs have failed to allege any facts that would support a finding that the plaintiff school districts or OEA's members have an interest which is within a constitutionally protected zone, the third prong of the test for establishing standing.[28]

## V. Political Question

¶ 18 Even though the plaintiffs do not have standing to assert the violation of the constitutional rights of Oklahoma students, we address whether we are presented with a non-justiciable political question. Generally, a motion to dismiss a petition is without prejudice and subject to leave to file an amended petition.[29] However, the district court in this case dismissed the petition with prejudice. We address the political question issue because we are presented with a public law question concerning educational and fiscal policy, the district court ruled that the suit presented non-justiciable political question, and it would be futile to return this case to the district court when we deem it to present a non-justiciable political question.

¶ 19 Our state's constitution divides governmental powers among the three branches of government. The Oklahoma Constitution at article IV, section 1 states:

> The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

This provision prohibits one branch of the government from controlling or subjecting another branch to coercive influences either directly or indirectly.[30]

¶ 20 Except for the reservation of the power of initiative and referendum, the state's policy-making power is vested exclusively in the Legislature.[31] The Legislature's policy-making power specifically includes both public education and fiscal policy.[32]

¶ 21 The Oklahoma Constitution charges the Legislature with the duty of establishing a public school system.[33] "The method employed by [the Legislature] to discharge the burden thus imposed is largely within its discretion."[34] "The determination of the policy to be pursued in matters of enactment of legislation to discharge its constitutional responsibility to the people in matters of education is a question that rests

**26.** *Consol. Sch. Dist. No. 1 v. Wright,* 1927 OK 474, ¶ 37, 261 P. 953, 957.

**27.** *Bd. of Educ. v. Cloudman,* 1939 OK 297, ¶ 23, 92 P.2d 837, 841.

**28.** This leaves the issue of whether this Court has the authority to direct fiscal legislation to adequately fund statutory mandates placed on local school districts. This issue calls into question the express constitutional commitment of fiscal policy issues to the Legislature. The plaintiffs admit in their brief "that the Oklahoma Legislature is free to exercise its 'legislative discretion' and ignore legislatively enacted goals for the improvement of public education" and we agree.

**29.** *See* 12 O.S.2001, §§ 2012(G), 2017.

**30.** *In re Okla. Dept. of Transp. for Approval of not to Exceed $100 Million Okla. Dep't of Transp. Grant Anticipation Notes, Series 2002,* 2002 OK 74, ¶ 8, 64 P.3d 546, 549; *see O'Donoghue v. United States,* 289 U.S. 516, 530–531, 53 S.Ct. 740, 77 L.Ed. 1356.

**31.** Okla. Const. art. IV, § 1.

**32.** Okla. Const. art. IV, § 1; art. V, § 55; art. XIII, § 1; *In re Initiative Petition No. 332, State Question No. 598,* 1989 OK 93, ¶ 5, 776 P.2d 556, 557.

**33.** Okla. Const. art. XIII, § 1; *Musick v. State ex rel. Miles,* 1938 OK 603, ¶ 15, 90 P.2d 631, 634.

**34.** *Musick,* 1938 OK 603 at ¶ 15, 90 P.2d at 634.

solely with the Legislature." [35]

■ ¶ 22 In *Fair School Finance Council of Oklahoma, Inc. v. State*,[36] this Court was asked to determine the constitutionally of the state's system for financing public education against an equal protection challenge. We stated that the Legislature has few constitutional restraints in carrying out its duty to establish and maintain a free public educational system.[37] The Legislature's method in carrying out this duty is largely within its discretion.[38] When the methods used for carrying out this duty are challenged, "the only justiciable question is whether the Legislature acted within its powers." [39]

¶ 23 Likewise, fiscal policy is exclusively within the Legislature's power. Article V, section 55 of the Oklahoma Constitution vests the Legislature with the function of appropriating funds. It provides:

No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.

¶ 24 In *Calvey v. Daxon*,[40] we stated:

This Court has no authority to consider the desirability, wisdom, or practicability of fiscal legislation. It is not our prerogative to question the sagacity of the expressed policy. Whether an act is wise or unwise, whether it is based on sound economic theory or whether it is the best means to achieve the desired result are matters for legislative determination. This Court, may not, based on its perception of how the State should conduct its business dealings, direct legislative decision making.

¶ 25 The legislature has the exclusive authority to declare the fiscal policy of Oklahoma limited only by constitutional prohibitions.[41] The plaintiffs have failed to provide us with any applicable limitations. The plaintiffs are attempting to circumvent the legislative process by having this Court interfere with and control the Legislature's domain of making fiscal-policy decisions and of setting educational policy by imposing mandates on the Legislature and by continuing to monitor and oversee the Legislature. To do as the plaintiffs ask would require this Court to invade the Legislature's power to determine policy. This we are constitutionally prohibited from doing.[42]

## VI. Conclusion

¶ 26 The plaintiffs have failed to allege facts which would give them standing to assert a violation of Oklahoma students' constitutional rights. Questions of fiscal and educational policy are vested in the Legislature, and its wisdom in these areas is not within the scope of this Court's review.

¶ 27 We have previously taken judicial notice of the immeasurable social, psychological and economic value of an education in contemporary society.[43] We also are aware of the importance of an educated society to our system of government. However, the important role of education in our society does not allow us to override the constitutional restrictions placed on our judicial authority. The plaintiffs have failed to present an issue to this Court which is proper for our adjudication. The district court's judgment is affirmed.

**35.** *Sch. Dist. No. 25 v. Hodge*, 1947 OK 220, ¶ 2, 183 P.2d 575, 579.

**36.** 1987 OK 114, 746 P.2d 1135.

**37.** *Id.* at ¶ 62, 746 P.2d 1135, 1150.

**38.** *Id.*

**39.** *Id.*

**40.** 2000 OK 17, ¶ 21, 997 P.2d 164, 171–172 (footnotes omitted).

**41.** *Id.*

**42.** Okla. Const. art. IV, § 1.

**43.** *Indep. Sch. Dist. No. 8 v. Swanson*, 1976 OK 71, ¶ 25, 553 P.2d 496, 501.

AFFIRMED.

WINCHESTER, C.J., LAVENDER, OPALA, WATT, TAYLOR, COLBERT, JJ., concur.

EDMONDSON, V.C.J., HARGRAVE, KAUGER, JJ., concur in result.